|    |    |    |
|----|----|----|
| 1  |    |    |
| 2  |    |    |
| 3  |    |    |
| 4  |    |    |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| THOMAS MICHAEL SNOW, | Case No. CV 16-06147-DFM |
|---|---|
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Thomas Michael Snow ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed and this case is dismissed with prejudice.

///

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff filed an SSI application on December 6, 2013.[2] See Administrative Record ("AR") 140-46. Plaintiff alleged that his disability began in 2010. See id. After his application was denied, he requested a hearing before an administrative law judge ("ALJ"). See AR 95-96. At a June 2015 hearing, the ALJ heard testimony by a vocational expert ("VE") and Plaintiff, who was represented by counsel. See AR 37-62.

On July 21, 2015, the ALJ denied Plaintiff's claims. See AR 22-36. As to Plaintiff's alleged disability, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least August 10, 2010. See AR 27. The ALJ then determined that Plaintiff had medically determinable impairments of hypertension, gastroesophageal reflux disease, sleep apnea, and obesity, but that none of those impairments was severe. See AR 27-28. Thus, the ALJ concluded that Plaintiff was not disabled. See AR 32.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7; see also 20 C.F.R. § 416.1481. Plaintiff sought judicial review in this Court. See Dkt. 1.

# II.
# DISCUSSION

Plaintiff argues that the ALJ erred in concluding that Plaintiff's physical impairments were not severe. See JS at 4-24. He contends that the residual effects of a 2010 heat stroke were severe impairments. See id. at 5; see also AR 29 (noting that in July 2010, Plaintiff suffered from massive heat stroke while working in extreme temperature conditions and was hospitalized for one

---

[2] Plaintiff also filed a claim for disability insurance benefits, but that claim is not at issue here. See Joint Stipulation ("JS") at 2; AR 25, 42.

2

week). Plaintiff argues that the ALJ improperly weighed (1) the medical opinions of his treating physicians, a consultative examining physician, a non-examining state agency physician, and his chiropractor, and (2) Plaintiff's "rehabilitative activity" and subjective symptom testimony. See JS at 8, 10, 12-14, 19-22.

A. **ALJ's Non-Severity Opinion**

The ALJ addressed whether Plaintiff was disabled since February 27, 2013, the effective date of Plaintiff's prior disability determination. See AR 25. After reviewing the medical record, the ALJ concluded that any impairment from the 2010 heat stroke had resolved. See AR 29. The ALJ gave great weight to the January 2014 report of consultative examiner Dr. Michael Wallack, who reviewed Plaintiff's relevant medical records, examined Plaintiff, and noted that Plaintiff was "agile" and that the results were "essentially unremarkable." AR 1024, 1028. The ALJ also considered Plaintiff's testimony that, despite complaints of general fatigue, Plaintiff could barbecue for hours at a time, walk one to three miles a day, do laundry, and could drive himself around as needed. See AR 30. The ALJ further weighed Plaintiff's comment at the hearing that he would accept a job offer for a construction superintendent or foreman position, but only "for the right amount of money." Id. (citing AR 45). The ALJ weighed the objective findings in the medical records against Plaintiff's subjective opinions and those of Plaintiff's physicians to conclude that Plaintiff did not have a severe impairment during the relevant time period. See AR 28-31.

B. **Applicable Law**

At step two of the sequential evaluation process, the claimant has the burden to show that he has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least 12 months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5

(1987) (noting claimant bears burden at step two); Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (same). To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 416.921(a).[3] "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citation omitted); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (citation omitted). Thus, applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. See id.; see also Glasgow v. Astrue, 360 F. App'x 836, 837 (9th Cir. 2009) (reversal only warranted if the decision "contains legal error or is not supported by substantial evidence").

When making a severity determination, the ALJ may consider the opinions of physicians who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 416.927(c);

---

[3] Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final.").

4

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a non-examining physician's. See Lester, 81 F.3d at 830. Thus, when a treating doctor's opinion is not contradicted by that of another doctor, it may be rejected only for clear and convincing reasons. See id. When a treating doctor's opinion is contradicted by another doctor's opinion, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting the treating doctor's opinion. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The court engages in a two-step analysis to review the ALJ's evaluation of Plaintiff's symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Id. If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. Id.

**C.     Analysis**

   **1.     Opinions of Kaiser Permanente Doctors**

Plaintiff first contends that the ALJ erred by failing to give Kaiser Permanente ("Kaiser") treating physician Dr. Grahek's recommended work restrictions more weight. See JS at 8. Plaintiff further alleges that Dr. Grahek's work restrictions are consistent with those recommended by two other Kaiser

doctors (Drs. Kalve and Asimont), and that the medical opinion of Dr. John Harbaugh (another Kaiser physician) is "inconclusive" because he "did not have the record." Id. at 12.

Substantial evidence supports the ALJ's evaluation of Dr. Grahek's medical opinions. Dr. Grahek treated Plaintiff for several years following Plaintiff's injury, but his last-issued work limitations expired on February 22, 2013. See AR 254. Although the ALJ discussed medical records before February 27, 2013—the date of Plaintiff's prior disability determination—he was assessing Plaintiff's disability after February 27, 2013. See AR 25. Thus, while Dr. Grahek's "last[-]issued . . . limitations through February 22, 2013," may have been probative as background, the ALJ did not err in affording more weight to more recent medical reports by other treating and examining physicians—such as those of Drs. Harbaugh (June 2013) and Wallack (January 2014). See Brown v. Comm'r of Soc. Sec., 532 F. App'x 688, 688-89 (9th Cir. 2013) (noting that ALJ properly rejected testimony of older, pre-current application assessments in favor of more recent opinions); Barraza v. Colvin, No. 13-0430, 2014 WL 651909, at *5 n.3 (E.D. Cal. Feb. 19, 2014) (noting that in Ninth Circuit, "medical reports that are most recent are more highly probative than those which were rendered at some earlier time"). Moreover, the ALJ cited Dr. Harbaugh's opinion that Dr. Grahek's work restrictions from 2010 were outdated and inaccurate. See AR 31, 601. Dr. Harbaugh stated that he may not have seen certain records (see AR 601 ("It may be that these restrictions mirror a prior AME or QME report of some kind but I have no records of this to be sure.")), but he was merely speculating that Dr. Grahek had relied on such hypothetical records; Plaintiff has not pointed to any records undermining Dr. Harbaugh's opinion that Dr. Grahek's restrictions were outdated and inaccurate.

As to the "renewed" work limitations of Drs. Kalve and Asimont, the

6

ALJ's decision to give little weight to their opinions is also supported by substantial evidence. The ALJ noted that Plaintiff was placed on modified work restrictions in July 2010 and that those work restrictions continued in subsequent progress notes over the years. See AR 30-31. Indeed, even in 2013, the work restrictions presented by Drs. Kalve and Asimont "copied and pasted" the restrictions imposed by Dr. Grahek in December 2012. Compare AR 573 (Dr. Grahek, 12/28/12) with AR 583 (Dr. Kalve, 2/22/13), 591-92 (Dr. Asimont, 4/29/13), 611 (Dr. Asimont, 8/5/13). Citing the objective medical findings and Dr. Harbaugh's medical evaluation, the ALJ provided specific and legitimate reasons for questioning the reliability of Dr. Kalve's and Dr. Asimont's work assessments. Substantial evidence accordingly supports the ALJ's decision to give little weight to the opinions of the three Kaiser physicians. See Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings."). Remand is not warranted on this basis.

### 2. Opinions of Workers' Compensation Doctors

Next, Plaintiff contends that the ALJ erred in weighing the opinions of Dr. Joseph and Dr. Pietruszka, both of whom examined Plaintiff and issued reports related to his eligibility for workers' compensation. See JS at 13-16; see also AR 1047-69 (Dr. Joseph's 11/27/13 report), 1104-110 (Dr. Pietruszka's 9/2/14 report). The ALJ gave more weight to Dr. Joseph's opinion that "there has been a complete resolution of the internal medical problems/physical problems involving the following: heat stroke, acute renal failure; and rhabdomyolysis" than Dr. Pietruszka's opinion that Plaintiff's impairments "have affected his ability to work and perform activities of daily living to a moderate to severe degree." See AR 31, 1168, 1109.

First, Plaintiff claims that Dr. Pietruszka's report is more reliable

7

because Dr. Pietruszka considered Plaintiff's cardiac testing results and his November 2010 lumbar MRI. See JS at 14-15. Contrary to Plaintiff's contention, Dr. Joseph also reviewed and considered Plaintiff's cardiac testing results that produced the 4.2 Metabolic Equivalents ("METS") score. See AR 288, 1063, 1066. As for the November 2010 lumbar MRI, Plaintiff has not shown to what extent, if at all, Dr. Pietruszka relied on this medical evidence to assess Plaintiff's ability to work during the relevant period. In cases where the ALJ properly synthesized conflicting evidence, the Court must defer to their determination. See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). Furthermore, the ALJ noted that Dr. Joseph, unlike Dr. Pietruszka, was a medical examiner qualified by the Division of Workers' Compensation – Medical Unit. See AR 31, 599, 1104. The ALJ also observed that Dr. Pietruszka's medical reports repeatedly cited to the same set of objective findings, dating from 2011, which were not reflective of Plaintiff's conditions during the relevant time period. See AR 31, 633 (11/5/13), 642 (11/18/10), 647 (5/6/13), 652 (2/15/13), 657 (12/14/12), 662 (5/17/12). The ALJ pointed out that the only objective findings by Dr. Pietruszka in more recent notes were Plaintiff's vital statistics—e.g., Plaintiff's age, weight, blood pressure, temperature, and heart rate—none of which spoke to Plaintiff's functional abilities. See AR 31, 1126-33. These were specific and legitimate reasons for favoring Dr. Joseph's opinion over Dr. Pietruszka's.

Second, Plaintiff argues that even Dr. Joseph's opinion supports a determination that Plaintiff had "nonexertional residuals" that affected his

ability to work. See JS at 15-16. The Court disagrees. As the ALJ observed, Dr. Pietruszka's and Dr. Joseph's medical opinions were not entirely "on point," because the workers' compensation evaluation criteria is different from that considered for disability evaluation, and the doctors' primary objective was not to evaluate Plaintiff's functional capabilities but to assign a "percentage of impairment" to his 2010 industrial injury. See AR 31. Moreover, Plaintiff cites only to Dr. Joseph's statement: "With a reasonable degree of medical probability, the chronic fatigue is a result of the following: coronary artery disease; peripheral vascular disease; underactive thyroid gland; alcohol; two strokes; multiple tiny strokes; and untreated sleep apnea." See JS at 15 (citing AR 1063). Plaintiff admits that it is "a little unclear what Dr. Joseph was reviewing." JS at 15. In any event, Dr. Joseph's statement does not support a finding that Plaintiff's fatigue had anything more than a minimal effect on his ability to work.

### 3. Opinion of Consultative Examiner

Plaintiff next contends that the ALJ erred by relying on Dr. Wallack's medical evaluation of Plaintiff. See JS at 17. Specifically, Plaintiff argues that Dr. Wallack's opinion is "remote" and the information on which he relied is "incomplete." Id.

Substantial evidence supports the ALJ's consideration and assessment of Dr. Wallack's complete internal medicine evaluation. As the ALJ noted, Dr. Wallack's opinion rested on his own independent examination of Plaintiff on January 23, 2014, and his review of Plaintiff's relevant medical records. See AR 30, 1024-25. Dr. Wallack's opinion itself constitutes substantial evidence that Plaintiff's impairments were not severe. See Tonapetyan, 242 F.3d at 1149. Moreover, the ALJ noted that Dr. Wallack's findings were "consistent with the multiple physical examinations conducted by treating sources at Kaiser." AR 30.

Although Plaintiff contends that Dr. Wallack's opinion should be discredited as being "remote" and "incomplete," Plaintiff has not shown what Dr. Wallack failed to consider or how any such purported omissions would change the doctor's ultimate conclusion. See Castaneda v. Astrue, 344 F. App'x 396, 398 (9th Cir. 2009) ("Even assuming [examining physician] did not review [plaintiff's] October 2003 MRI, the ALJ did not err in considering [examining physician's] report. [Examining physician's] assessment rested on his own independent examination of [plaintiff] and was consistent with the record as a whole."). Absent such a showing by Plaintiff, substantial evidence supports the ALJ's decision to give great weight to Dr. Wallack's medical opinion. Remand is not warranted on this basis.

### 4. Findings of State Agency Physician

Plaintiff also contends that the ALJ erroneously failed to consider the medical opinion of Dr. Phillips, a state agency consultative physician. See JS at 18-19; AR 69-71. Dr. Phillips reviewed Plaintiff's medical file and determined that, as of December 30, 2013, Plaintiff had a "light" residual functional capacity and was also limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. See AR 70-71.

Although Plaintiff is correct that the ALJ failed to discuss Dr. Phillips's findings, the Court finds that any error by the ALJ was harmless. See Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that ALJ's error is harmless where such error is inconsequential to ultimate non-disability determination). At the disability hearing, Plaintiff testified that he formerly worked as "both" as a carpenter and construction superintendent for around fifteen years total. See AR 46, 54. The VE then testified that a person restricted to light work could still work as a construction superintendent, citing Dictionary of Occupational Titles ("DOT") 182.167-026 (a description that notes that climbing, balancing, stooping, kneeling, crouching, and crawling are

"not present" in construction superintendent position). See AR 57. Moreover, Plaintiff testified at the disability hearing that he was actively seeking jobs as a construction superintendent and would only accept that position "for the right amount of money"—suggesting that Plaintiff believed he had the physical capabilities at that time to work as such. AR 45. Thus, even if the ALJ fully accepted Dr. Phillips's ultimate light work determination with postural limitations, Plaintiff would still be considered not disabled because he could still engage in his past relevant work as generally performed. See AR 57, 60; see also 20 C.F.R. § 416.920(a)(4)(iv). Because Plaintiff has not shown how the ALJ's error would result in a different outcome, reversal is not warranted on this ground. See Burch v. Burnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); Dubois v. Colvin, 649 F. App'x 439, 442 (9th Cir. 2016) (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" (citation omitted)).

### 5. Plaintiff's Activities of Daily Living and Subjective Testimony

Plaintiff contends that the ALJ erred in assessing Plaintiff's activities of daily living and rejecting Plaintiff's subjective symptom testimony. See JS at 19-22. Specifically, Plaintiff argues that his engagement in rehabilitative activity should not undermine his subjective symptom testimony, and that the ALJ should have considered Plaintiff's testimony in conjunction with the medical evidence of pain and dysfunction. See id. at 20, 22.

The ALJ found Plaintiff's allegations to be "partially credible" because they were not supported by the objective medical findings, the medical opinions in the record, and Plaintiff's own testimony regarding his activities of daily living and physical symptoms. See AR 30-31. Notably, the ALJ found Plaintiff to be less concerned with his physical limitations (and more with his financial compensation), because he testified that he would only accept a job as

a construction superintendent or foreman "for the right amount of money." AR 30, 45.

The ALJ's assessment is supported by substantial evidence—for example, Dr. Wallack's medical report that Plaintiff was "agile" and could perform basic work activities. AR 1028-29. Such medical evidence was a clear and convincing reason for the ALJ to discredit Plaintiff's subjective symptom testimony. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding that ALJ permissibly discredited claimant's subjective complaints of where medical evidence did not corroborate severity of alleged symptoms). The ALJ also properly weighed Plaintiff's subjective testimony of fatigue against Plaintiff's self-reported physical activities, which included walking one to three miles daily, barbecuing for hours at a time, doing laundry, and driving for at least 35 minutes, when necessary. See AR 30, 43, 48, 51, 600; see also Smolen, 80 F.3d at 1284 ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . the claimant's daily activities."). Plaintiff labels these activities as "rehabilitative"; whether or not these activities promoted rehabilitation, they clearly reflect his functional limitations. The ALJ also cited Plaintiff's statement at the hearing that he would only accept a position as a construction superintendent "for the right amount of money"—indicating that Plaintiff was less "concern[ed] for his physical limitations" and more "concern[ed] for adequate compensation." AR 30, 45; see also Light v. Comm'r of Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies . . . in [plaintiff's] testimony"). Having considered the contradictory medical findings, activities of daily living, and Plaintiff's own incongruent testimony, the ALJ provided sufficiently specific, clear and convincing reasons for discounting Plaintiff's subjective testimony about the severity of his symptoms. Thus, remand is not warranted on this

issue.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: March 13, 2018

							_____
							DOUGLAS F. McCORMICK
							United States Magistrate Judge